**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VINCENT H. DOZIER, ) | |
| ) | CASE NO.    1:11-CV-782 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Vincent Dozier ("Dozier") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On August 1, 2007, Dozier filed an application for POD, DIB, and SSI alleging a disability onset date of November 28, 1998. His application was denied both initially and upon reconsideration. Dozier timely requested an administrative hearing.

On April 1, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Dozier, represented by counsel, testified. Thomas F. Nimberger also testified as an impartial vocational expert ("VE"). On April 8, 2010, the ALJ found Dozier was able to perform a

significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-seven (47) at the time of his administrative hearing, Dozier is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Dozier has a high school education and past relevant work as cook helper and construction worker. (Tr. 17.)

### *Hearing Testimony*

At the administrative hearing. Dozier testified as follows:

- He last worked in 2008 at a warehouse. He was terminated because he could not fulfill the physical demands of the job. (Tr. 479-80.)

- He had talked about hip surgery with his doctors, but it was not scheduled. He received a cortisone shot, which initially helped, but his pain returned. (Tr. 480.) His left hip bothers him so much that he can hardly walk or get out of bed. (Tr. 481.)

- Aside from his hip and spine, he also has problems with his right leg where he was shot. His foot swells up. (Tr. 481.)

- He was prescribed pain medications which sometimes help. (Tr. 481.)

- He does not drive, as he does not have a license. (Tr. 482.)

- He went to prison for check fraud and selling drugs. (Tr. 483.)

- He does not drink or smoke. (Tr. 483.)

- Due to pain, he sits or lays flat for most of the day. (Tr. 484-85.) He tries to help his wife around the house, including doing the dishes and laundry. (Tr. 485.)

- He has a plate in his left, non-dominant hand. (Tr. 486.)

- He thought he could stand for thirty minutes to an hour, but could not stand for an entire, uninterrupted hour several times a day. He believes he could be on his feet for a total of two hours in a day. (Tr. 487.)

- He cannot walk around the block when he is in pain. (Tr. 487.)

- It is difficult for him to walk up stairs, and he cannot do so without a railing. (Tr. 487.)

- He can sit for about thirty minutes at a time for a total of two hours in an eight-hour work day. (Tr. 487-88.)

- He needs to lie down during the day, for about four out of eight hours. (Tr. 488.)

- He does not experience any side effects from his medications. (Tr. 488.)

- He weighs approximately 250 pounds. (Tr. 495.)

The ALJ asked the VE to consider a hypothetical person with same age, education, and work experience as Dozier. (Tr. 495.) Such person could lift, carry, push, and/or pull ten pounds frequently and twenty pounds occasionally. (Tr. 496.) In addition, such person would be limited to six hours sitting and two hours of standing/walking in an eight-hour workday. *Id*. Such person would be required to switch positions briefly, for a minute or less, every hour. *Id*. Such individual should never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs. *Id*. Also, such person could only occasionally stoop, kneel, crouch, or crawl. *Id*. Finally, such person should not work around dangerous machinery or other hazards. *Id*.

The VE testified that such an individual would be unable to perform Dozier's past relevant work. *Id*. However, the VE identified the following jobs that the individual could perform: bench assembly, sorter, and order clerk. (Tr. 497-98.) The VE testified that if an additional limitation were added – being off task twenty percent of the time – the person would be unemployable. (Tr. 498-99.) Dozier's counsel asked if the jobs identified would be affected by a restriction of no more than occasional handling or fingering with the left hand. (Tr. 499.) The VE responded that two of the three positions would be eliminated or reduced. *Id*. However, the VE stated that other jobs could be performed with the additional limitation: front desk receptionist and call center operator. (Tr. 499-500.) If the hypothetical person had to change positions every thirty minutes causing him to be off task for ten minutes of each hour, the person would not be employable. (Tr. 500-01.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments,

3

that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Dozier was insured on his alleged disability onset date, November 28, 1998, and remained insured through June 30, 2007. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Dozier must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV.  Summary of Commissioner's Decision

The ALJ found Dozier established medically determinable, severe impairments, due to degenerative arthritis and avascular necrosis of the left hip, degenerative disc disease, history of fracture of the left second metatarsal with open reduction and internal fixation, and history of

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

gunshot wound to the right thigh. (Tr. 12.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dozier was found incapable of performing his past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Dozier is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the proper legal standard was applied.

5

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

### A. RFC and Credibility

Dozier's single assignment of error appears to combine multiple issues. First Dozier asserts that the ALJ's RFC finding was arbitrary. Second, Dozier takes issue with the ALJ's pain analysis, specifically his treatment of Dozier's credibility. (ECF No. 16 at 9-12.)

Dozier concedes that Mehdi Saghafi, M.D., a consultative examining physician, opined that Dozier could sit for 6-8 hours, stand/walk for 5-6 hours, and lift 21-40 pounds occasionally and 15-20 pounds frequently in an eight-hour workday. (ECF No. 16 at 3, Tr. 380.) These limitations are less restrictive than those ultimately found by the ALJ. Notably, the ALJ ascribed Dr. Saghafi's opinion "less than full weight as evidence received at the hearing level indicates greater exertional limits are warranted." (Tr. 16.) Curiously, Dozier takes issue with the ALJ "independently makin[ing] his own determination as to Mr. Dozier's limitations." (ECF No. 16 at 11.) The Court finds nothing improper in the ALJ deciding Dozier's RFC, as a claimant's RFC is not a medical opinion. "Opinions on some issues, such as [opinions that you are disabled or your residual functional capacity], are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case ..." 20 C.F.R. § 404.1527(e). A recent decision of this Court explained as follows:

> The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C.A. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). Pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding

>   the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2).
>
>   The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence. *See, e.g., Ford v. Comm'r of Soc. Sec.*, 114 F.App'x 194 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 2009 WL 2514058, at *7 (6th Cir. 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. Appx. 149, 2009 WL 2514058 at *7.

*Henderson v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 18644, 6-7 (N.D. Ohio 2010).

As such, the ALJ did not act improperly in considering both the medical evidence of record and Dozier's testimony in arriving at the RFC.

Dozier also takes issues with the ALJ pain analysis and his finding that the severity of Dozier's symptoms were not credible to the extent they were greater than the RFC. It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step analysis. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Commissioner must examine whether (2)(a) the objective medical evidence confirms the alleged severity of pain, *or* (2)(b) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ found that Dozier suffered from medically determinable impairments that "could reasonably be expected to cause the alleged symptoms" – namely pain. (Tr. 14.) However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with

7

[his RFC] assessment." *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 96-7p. Beyond medical evidence, there are seven factors that the ALJ should consider.[2]

The ALJ's discussion concerning the Dozier's credibility as it relates to the *severity* of his alleged symptoms is as follows:

> The claimant's earnings records reflect a history of sporadic work and earnings generally below those which would represent substantial gainful activity (Ex. 4D). The undersigned notes that while the claimant's earnings records do not indicate any wages in 2006, the claimant reported to physicians that he was employed by Capital Van & Storage on a full time basis (Ex. 7F, p. 1). The claimant's inconsistent work history raises questions as to whether his current unemployment is in fact due to his medical impairments.

---

[2] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

> The claimant has reported a gunshot wound to his right thigh occurring in November 1998 and resulting in right foot and heel pain (Ex. 3F, p. 7). In February 2000 the claimant reported the fracture of his right hand three months prior requiring open reduction and internal fixation surgery (Ex. 3F, p. 14). There is little medical evidence of the claimant's treatment for these conditions and no evidence that he sought any treatment between 2002 and 2006. The claimant's history of a gunshot wound does not support limitations greater than those assessed above. The claimant's history of fracture of the left 2nd metatarsal supports the manipulative limitations set forth above.
>
> \*\*\*
>
> EMG studies of the claimant's lower extremities in December 2009 was technically impaired by the claimant's incomplete activation of motor units due to physical pain or reduced effort (Ex. 13F, p. 43).
>
> Physical examination of the claimant in September 2009 noted the claimant's reports of lower back pain with radiation to the left hip and numbness and tingling of the left lower extremity (Ex. 12F, pp. 11-12). The claimant's motor strength was found to be normal, except for the right hip flexor, in which testing was unreliable. The range of motion of the claimant's lumbar spine was observed to be full with flexion and extension, but limited in left side bending. Straight leg testing was negative. The claimant's reflexes were indicated to be absent in the right Achilles, but intact elsewhere. During an October 2009 physical therapy evaluation the claimant was observed to walk with an abnormal gait, with decreased range of motion in all planes, normal sensation and tenderness to palpitation of the lumbar paraspinal muscles. Inconsistencies were noted in testing as the claimant complained of pain prior to starting movements (Ex. 12F, pp. 1-5). Subsequent examinations of the claimant indicated similar findings, however in December 2009, during evaluation by an orthopaedist the claimant was noted to walk with a normal, but antalgic gait and had limited range of motion of the left hip with tenderness to palpitation (Ex.13F, pp. 15-17). The exertional limitations set forth in the claimant's [RFC] are consistent with the clinical signs of musculoskeletal impairment noted by the claimant's treating physicians. The limited findings of the claimant's physicians are not consistent with the claimant's allegations as to the severity of his impairments.
>
> The claimant's treatment, since his application was filed in August 2007 has been conservative in nature, generally consisting of medications, physical therapy and joint injections in December 2009 (Ex. 13F, p. 20). The claimant testified that he experiences no significant side effects from his prescribed medications. He stated that he obtained only short term relief from cortisone injections. The claimant did report limited pain relief through supervised physical therapy exercises, but none from home exercises (Ex. 13E, pp. 27-28, 36-37, and 48-49). The claimant was evaluated by an orthopaedic surgeon in December 2009 who recommended conservative treatment due to the heavy demands of the claimant's reported work in construction (Ex. 13F, p. 15-17).
>
> No physician that treated the claimant submitted an opinion as to his [RFC]. The claimant has considered the opinions of physicians who examined the claimant or reviewed his case file at the request of the Bureau of Disability Determination (BDD).
>
> \*\*\*

9

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Finally, the claimant reported activities to his treating physicians which are inconsistent with the alleged severity of his impairments. While the claimant testified as to significant limitations of his ability to lift, sit, stand and walk he reported a "flare up" of his symptoms while helping a friend move in October 2009 (Ex. 12F, p. I) and bike riding in November 2009 (Ex. 13F, p. 45). The claimant testified that he is also able to perform household chores such as cleaning dishes and laundry. Overall, the claimant's inconsistently reported limitations of his daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> The undersigned notes that the claimant, by his own testimony has been convicted of crimes including drug trafficking and fraudulent checks. The claimant's history of involvement with the criminal justice system for a crime or crimes of dishonesty has been considered along with the factors discussed above in evaluating his credibility.
>
> Given all the factors analyzed in this case, including but not limited to the claimant's poor work history, conservative treatments offered to the claimant, and the relative lack of strongly positive clinical signs documented in treatment notes, the preponderance of the evidence supports a finding that he can perform a range of sedentary work with the manipulative and postural limitations set forth above.

(Tr. 14-16.)

First, Dozer takes issue with the ALJ's conclusion that the limited objective findings of his physicians are not consistent with the severity of the pain alleged. (ECF No. 16 at 11.) Dozier contends that this conclusion is inherently inconsistent with the ALJ's finding that Dozier's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" (*i.e.* pain). These two findings, however, are not necessarily inconsistent. Indeed, to find otherwise would essentially transform this Circuit's two-step pain analysis into a one-step process. Merely because an ALJ finds that a claimant has impairments that could cause pain does not negate the possibility that objective medical evidence fails to support the alleged severity of the pain.

Second, Dozier takes issue with the ALJ's characterization of his daily activities, and asserts that the chores he performs are not inconsistent with his testimony that he needs to lie down most of the day. The ALJ, however, did not find Dozier incredible simply because he does

10

dishes and laundry.  The ALJ found that Dozier inconsistently reported the limitations as to his daily activities.  (Tr. 16.)  Furthermore, while the ALJ conceded that Dozier's hearing testimony described fairly limited activities, he did not find Dozier's testimony credible.  *Id*.

Finally, Dozier specifically takes issue with the ALJ considering his past criminal record involving crimes of dishonesty and inconsistent work history when determining his credibility.  Dozier cites no law indicating that consideration of such factors is improper or requires a remand.  In *Netter v. Astrue*, 272 Fed. Appx. 54, 55 (2d Cir. 2008), a claimant raised a similar argument.  The Second Circuit dismissed the argument, noting that claimant had cited "no controlling legal authority for the proposition that these are impermissible considerations."  Moreover, the *Netter* court further noted that the ALJ's credibility determination "also rested on other grounds" such as inconsistencies between the medical record and claimant's testimony.  *See also Harris v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 15833 (N.D. Ohio, Feb. 23, 2010) ("Plaintiff's criminal history, adequately documented in the record, was a legitimate consideration in evaluating her credibility.") (*citing Hardisty v. Astrue*, 592 F.3d 1072 (9th Cir. 2010) (holding that an adverse credibility finding resting in part on claimant's criminal history was substantially justified)); *Berry v. Astrue*, 2010 U.S. Dist. LEXIS 93317 (S.D. Ohio, Jun. 9, 2010) (finding nothing improper with an ALJ's consideration of claimant's theft conviction while evaluating the claimant's credibility).  The Court finds nothing improper in the ALJ's consideration of Dozier's past convictions involving crimes of dishonesty in arriving at his conclusion that Dozier's allegations were not entirely credible.

Overall, the ALJ's opinion expressly discussed several of the seven factors set forth in SSR 96-7p, such as Dozier's daily activities and his conservative course of treatment.  Specifically considering all of the factors is not required and does not render the credibility determination improper.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED.

s/ Greg White<br>
United States Magistrate Judge

Date: March 15, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**